## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ROBERT STANLEY LANE, JR.**
        *Petitioner*

versus

**DARREL VANNOY**, Warden
Louisiana State Penitentiary
        *Respondent*

CIVIL ACTION NO:_____

DATE FILED:_____

s/_____
     Dy. Clerk of Court

*************************************************
## MEMORANDUM AND EXHIBITS IN SUPPORT OF:
## PETITION FOR WRIT OF HABEAS CORPUS (28 U.S.C.A. 2254)
## AND
## REQUEST FOR AN EVIDENTIARY HEARING
*************************************************

Original Petition on Behalf of : **Robert Stanley Lane, Jr.**

**TENDERED FOR FILING**

**MAR 26 2019**

U.S. DISTRICT COURT
Eastern District of Louisiana
Deputy Clerk

Respectfully Submitted:

*Robert Stanley Lane Jr 250492*
Robert Stanley Lane, Jr. DOC #250492
Main Prison Complex, Spruce Hall-3
Louisiana State Penitentiary
Angola, Louisiana 70712

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................ii

TABLE OF EXHIBITS ........................................................................................................iii

PROCEDURAL HISTORY ................................................................................................1-2

CLAIMS FOR RELIEF .........................................................................................................3

AEDPA REVIEW STANDARDS .........................................................................................3

    EXHAUSTION OF STATE REMEDIES .....................................................................3

    STATE COURT ADJUDICATION ............................................................................3,4

    ESTABLISHMENT OF A FACTUAL BASIS ...............................................................4

    TIME-LIMITATIONS PERIOD ................................................................................4,5

    STATEMENT OF FACTS ........................................................................................5-8

    STANDARD OF REVIEW .......................................................................................8,9

CLAIMS PRESENTED FOR REVIEW:

**DIRECT APPEAL ISSUES:**

    a. Insufficiency of the Evidence .............................................................................9,10

    b. Batson Objection ..............................................................................................10-11

    c. Challenge for Cause ..........................................................................................11-15

CONCLUSION .....................................................................................................................14

CERTIFICATE OF SERVICE ..............................................................................................15

§2254 Application Form ........................................................................... Front Attachment

Pauper Application Form (§2254) ............................................................. Front Attachment

# TABLE OF AUTHORITIES

Page No:

## U.S. CONSTITUTION:

Sixth and Fourteenth Amendments...........................................................................................1

## U.S. CODAL ARTICLES:

28 U.S.C. § 2244(d)(2)..............................................................................................................7
28 U.S.C. § 2254..........................................................................................................1,4,5,8,9
28 U.S.C. § 2254(d).........................................................................................................5,6,8,9
28 U.S.C. § 2254(d)(1)(2)..........................................................................................................8
28 U.S.C. § 2254(e)(1)..............................................................................................................9

## U.S. CASE LAW:

Harrington v. Richter, ---U.S.---, 131 S.Ct. 770,786, 178 L.Ed.2d 624 (2011)........................9
Strickland v. Washington, 466 U.S. 688, 104 S.Ct. 2052, 80 L.Ed.2d. 674 (1984).................9

## FEDERAL CASE LAW:

Busby v. Dretke, 359 F.3d 708,713 (5th Cir. 2004)..................................................................9
Davis v. Johnson, 158 F.3d 806 (5th Cir. 1998).......................................................................6
Flanagan v. Johnson, 154 F.3d 196 (5th Cir. 1998).................................................................6
Green v. Johnson, 160 F.3d 1029,1041 (5th Cir. 1998)..........................................................10
Martin v. Maxey, 98 F.3d 844 (C.A. 5th Cir.(Miss.) 1996)......................................................18

## LOUISIANA REVISED STATUTES:

R.S. 14:81.2...............................................................................................................................3

## LOUISIANA CODAL ARTICLES:

C.Cr.P. art. 929........................................................................................................................10
C.Cr.P. art. 930.3..................................................................................................................5,10
C.Cr.P. art. 930.8(A)(1).............................................................................................................7

## LOUISIANA CASE LAW:

State v. Lane, *** So.3d ***....................................................................................................2

# TABLE OF EXHIBITS

Exhibit "A"  Decision (First Circuit Court of Appeals) ..................................pgs. 16-49

Exhibit "B"  Decision (Louisiana Supreme Court) ...........................................pg. 50

Exhibit "C"  Application for Post Conviction Relief (District Court) ...............pgs. 51-79

Exhibit "D"  District Court's Judgment (Denying PCR) ..................................pgs. 80-85

Exhibit "E"  First Circuit's Judgment (Denying PCR) ....................................pgs. 86,87

Exhibit "F"  Supreme Court's Judgment (Denying PCR) ................................pgs. 88,89

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ROBERT STANLEY LANE, JR.** *Petitioner* | CIVIL ACTION NO:_____ |
| versus | DATE FILED:_____ |
| **DARREL VANNOY**, Warden Louisiana State Penitentiary *Respondent* | s/_____ Dy. Clerk of Court |

### PETITION FOR WRIT OF HABEAS CORPUS (28 U.S.C.A. 2254)
### AND
### REQUEST FOR EVIDENTIARY HEARING

MAY IT PLEASE THE COURT:

NOW INTO COURT COMES **Robert Stanley Lane, Jr.** (hereinafter **"Lane"**) pursuant to 28 U.S.C.A. 2254 *et seq.*, respectfully submits his Memorandum and Exhibits in Support of Petition for Writ of Habeas Corpus alleging violations of **Rights** guaranteed by the **Fourth, Fifth, Sixth and Fourteenth Amendments** to the **United States Constitution**.

Lane further submits that upon review of the entire state court record, this Honorable Court should determine that a federal evidentiary hearing is necessary, and thereafter, that his petition be GRANTED, and ORDER Lane released from custody. In the alternative, this Honorable Court remand this matter to the State of Louisiana for Lane to either be tried anew or released from custody within 120 days of the date of this Court's order.

### PROCEDURAL HISTORY

Lane was charged in a bill of information with one count of Molestation of a Juvenile (R.S. 14:81.2) on October 28, 2013, for allegedly touching his granddaughter, B.L., on her buttocks with his hand one time. R. 35.

Direct appeal was affirmed by the First Circuit Court of Appeals in an unpublished opinion on November 9, 2015, in Docket No: 2015-KA-0064. **See Exhibit "A", pgs. 16-49.** See **State v. Lane**, \*\*\* So.2d \*\*\*. Certiorari to the Louisiana Supreme Court was denied on March 24, 2016, in Docket No: 2015-K-2248. **See Exhibit "B", pg. 50.** See **State v. Lane**, \*\*\* So.2d \*\*\*.

On January 20, 2017, Lane submitted (for filing) his **first** Application for Post-Conviction Relief [1] in the 22nd Judicial District Court. Therein, Lane outlined several fact-allegations of ineffective assistance of counsel which, if established, would entitle him to relief. Lane asserted, however, that without specific supporting documentation, he could not meet his burden of proof as required by C.Cr.P. art. 930.2. **See PCR, Exhibit "C", pgs. 51-79.**

On February 23, 2017, the Honorable William J. Knight, of the 22nd Judicial District Court, summarily denied Lane's PCR without providing him with specific supporting documentation and without ordering the district attorney to file an answer. **See Judgment, Exhibit "D", pgs. 80-85.**

Lane applied for supervisory review to the First Circuit Court of Appeals, which denied relief on September 7, 2017. **See First Circuit's Denial, Exhibit "E", pgs. 86,87.**

Lane sought supervisory review to the Supreme Court of Louisiana, which denied relief on November 14, 2018. **See Supreme Court's Denial, Exhibit "F", pgs. 88,89.**

Finally, Lane has exhausted **all** available state court remedies, and now before this Honorable Court seeking a review and relief from the state courts' judgment.

---

[1] / It is significant to note that the **claims** raised in Lane's state habeas petition are **not** included in his federal habeas petition. Furthermore, Lane has attached hereto his state habeas petition (as well as the state court's judgments) which is relevant to show that Lane's federal petition is timely.

## CLAIMS PRESENTED

**1.) Insufficiency of the Evidence**

**2.) Batson Objection**

**3.) Challenge for Cause**

## AEDPA REVIEW STANDARDS

Under the Anti-Terrorism Effective Death Penalty Act (AEDPA) amendments to the federal habeas statutes, changes were made to 28 U.S.C. § 2254 which require Lane to establish certain criteria in order to have a federal court review Constitutional violations in the state court proceedings. Lane will now addresses those criteria.

## EXHAUSTION OF STATE REMEDIES

Pursuant to 28 U.S.C. § 2254(b)(1) the applicant must exhaust all available state remedies or establish that "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant."

In the instant case, Lane asserts that all claims for relief raised herein were properly presented to the State's highest Court either on direct review or through State post-conviction applications which were properly presented to the Louisiana Court of Appeal and the Louisiana Supreme Court on a writ of Certiorari.

## STATE COURT ADJUDICATION

Pursuant to 28 U.S.C. § 2254(d) a federal judge may not grant a writ on any claims adjudicated on the merits in State court unless:

"(d) . . . the adjudication of the claim--
    (1) resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In the instant case, Lane avers that the claims presented in state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Lane, therefore, is entitled to a de novo review on his habeas petition.

### ESTABLISHMENT OF A FACTUAL BASIS

Pursuant to 28 U.S.C. § 2254(e)(2), "if the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--

(A) the claim relies on--

(I) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for the constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense.

Lane avers that during the State Court proceedings he did, in fact, establish a factual basis for **all** of the claims submitted therein.

### TIME LIMITATIONS PERIOD

The Anti-Terrorism Effective Death Penalty Act of 1996 (AEDPA), which became effective on April 24, 1996, established a one-year prescriptive time-limitation period for State

prisoners seeking federal habeas corpus relief. The one-year time limitation generally begins to run from the date the State conviction became final on direct appellate review or on the date when the time for seeking such review expired. 28 U.S.C. 2244(d). For prisoners whose convictions became final prior to the effective date of AEDPA, the one year began to run on the effective date. *Flanagan v. Johnson*, 154 F.3d 196 (5th Cir. 1998).

28 U.S.C. 2244(d)(2) provides for the tolling of the limitation period during the time when a properly filed state post-conviction, or other collateral review, is pending. Also, the limitation period has been determined to a prescriptive period, rather than a jurisdictional bar. *Davis v. Johnson*, 158 F.3d 806 (5th Cir. 1998). Additionally, because the time limitation is prescriptive, and not jurisdictional, in appropriate exceptional circumstances the time limitation can be equitably tolled.

In the instant case, Lane's conviction and sentence became final on **June 22, 2016**, *i.e.* by the expiration of 90 days allowed for a petition for Certiorari to the United States Supreme Court. On **January 20, 2017**, Lane filed his **first** State post-conviction application which was pending until **November 14, 2018**, when the Louisiana Supreme Court denied supervisory writs. A total of **212 days** elapsed on Lane' one year. Leaving Lane with **153 days** left on his one year to file his federal habeas, (i.e., **April 16, 2019**).

## STATEMENT OF THE FACTS

B.L. testified that she spent the night at her paw-paw's apartment by herself only one time. R. 552. B.L. testified that she arrived at her paw-paw's apartment around "1-ish, 12-ish" that day. She testified that she knew it was summer time, but doesn't remember anything that

happened that day, or if she swam in the pool. R. 548. B.L. testified that later that evening, she was watching TV. She was lying on her stomach on the couch and her paw-paw was in a rocking chair. R. 549. She testified that at one point, he came over to her and stared at her. She testified that he reached his hand under her blanket and touched her on the buttocks. R. 550. B.L. testified that he then asked her to come to the bedroom. R. 551. B.L. testified that she went into the bathroom and locked the door. Her paw-paw went into his bedroom for the night. R. 551. B.L. testified that the next morning, Robert Lane went to work and her father came to pick her up. R. 552. B.L. went to her paw-paw's several other times with her family for holidays and other events.

A year later, in June 2011, Robert Lane was accused of touching a little girl, A.H., at the pool at his apartment complex. The entire pool area was captured on a video surveillance system. When Robert Lane's attorneys obtained the surveillance footage from the day of the incident, it was too grainy to make out. In spite of allegedly having let their daughter spend the night alone with Robert Lane a year before he was accused of molesting a young girl at his apartment complex pool, B.L. testified that neither of her parents ever asked her if her grandfather was inappropriate with her. R. 565-566, 574, 622, 636.

Robert Lane began a five year sentence for Indecent Behavior with a Juvenile in February 2012. Nearly eighteen months later, B.L. was living with her father and his girlfriend in a trailer with her three children. B.L. and Alissa Redfern were discussing how Alissa had been molested and had gone to the CAC for an interview. R. 552. Alissa went through the Good Touch/Bad Touch program at the St. Tammany public school and told a teacher what happened

to her.

B.L. had been through that program, as well. She did not report any inappropriate contact with her paw-paw during the program; she did not report any contact after her paw-paw was arrested and pled guilty to touching a young girl at his pool; she did not report after he went to jail and began serving a five year sentence for indecent behavior. For the first time, when her friend Alissa told her that she had been molested, B.L. told her that she was at her paw-paw's apartment at a pool party, when he "grabbed her butt" in the pool.

Twelve year old Alissa told B.L. to "let it out to someone" and they woke up Alissa's mother, Lisa Redfern. R. 553. According to Lisa Redfern, B.L. repeated to her that she was *at a pool party when her paw paw grabbed her behind*. R.607. Redfern was adamant that B.L. told her that the touch involved "something at the pool." The story B.L. told mirrored exactly the charge regarding A.H., but differed significantly from the story she told to the police and on the stand.

When she took her to the police station, B.L.'s mother narrowed the time frame of when this could have occurred to sometime between March and June 2010, based on "the whether," "whether B.L. was in school," "if they were able to go swimming." R. 164, 320. B.L.'s mother was incarcerated on drug charges at the time. R. 320.

On June 5, 2013, B.L. was interview by the CAC. R. 586. In her CAC video, B.L. stated that she couldn't remember if her mother or father picked her up the next day, but she practiced her testimony with the DA's office and "Lance from the DA's office told her it was her father who picked her up." R. 577.

B.L. testified that she was "scared" about coming to court and only told her teachers and a "few of [her] close friends...probably two." R. 555-6. On the stand, B.L. admitted that she took multiple pictures herself going to court and posted them on Face-book and Instagram accounts to over 1700 followers with captions like "going to court!" and "you wish you had my swag!" R. 558-9.

JoBeth Rickels, an expert from the Children's Advocacy Center, testified that she has conducted over 2,000 forensic interviews. R. 597. She testified that you only have a 50% chance of knowing if a child is lying or not about the allegations. R.600.

At trial, the prosecution introduced as 412.2 evidence that Robert Lane molested a young girl at the pool in 2011 and molested his step-daughter in the late 80's on a camping trip. Robert Lane was convicted.

### a. Standard of Review

The Anti-terrorism and Effective Death Penalty Act ("AEDPA") governs this court's review of Lane' Claims. *White v. Thaler*, 610 F.3d 890,898 (5th Cir. 2010). Under the AEDPA, a federal court may not grant habeas relief unless the state court's adjudication of the claim resulted in a decision that (1) was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)(2).

A state court's decision is "contrary to" clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a

different conclusion than the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708,713 (5th Cir. 2004). A decision constitutes an "unreasonable application" of clearly established federal law if it is "objectively unreasonable". *Neal v. Puckett*, 286 F.3d 230,236 (5th Cir. 2002 (En banc). The state Court's factual determinations are presumed correct, and it is the petitioner's burden to rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Pape v. Thaler*, 645 F.3d 281,287 (5th Cir. 2011).

A state court's determination that a claim lacks merit precludes federal habeas review so long as fair-minded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, ---U.S.---,---, 131 S.Ct. 770,786, 178 L.Ed.2d 624 (2011). In other words, under § 2254(d), a state prisoner seeking habeas relief "must show that the state court's ruling on the claim...was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement".

### 1.) INSUFFICIENCY OF THE EVIDENCE

Lane avers that the adjudication of this claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding". More specifically, in adjudicating this claim on appeal, the Honorable First Circuit made these findings:

> "The evidence at trial established that the defendant did not accidentally or inadvertently touch B.L.'s buttock; it established, rather, that the defendant, after staring for some time at B.L., who was lying on the couch, approached her. He then placed his hand under the blanket B.L. had over her, moved his hand under her nightgown, and then further moved his hand beneath her underwear to touch her buttock directly. Following this,

the defendant told B.L. to come sleep with him".

Lane respectively avers that the First Circuits determination of the facts was unreasonable in light of the evidence presented at trial. At trial, B.L. testified that during the only overnight trip by herself at her grandfather Robert Lane's apartment, he touched her buttock with his hand. The ages of the relative parties are not in dispute. However, there was insufficient evidence produced at trial that the touch, assuming for argument's sake that it took place, was done "with the intention of arousing or gratifying the sexual desires of either person," or that the action was conducted through the "use of influence by virtue of a position of control or supervision over the juvenile."

In sum, the decision rendered by the First Circuit Court of Appeals was based on an unreasonable determination of the facts in light of the evidence presented. Therefore, Lane's conviction and sentence should be reversed and and the matter remanded for a new trial.

### 2.) BATSON OBJECTION

Lane avers that the adjudication of this claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding". More specifically, in adjudicating this claim on appeal, the Honorable First Circuit made these findings:

> "Initially, we note that it is not clear from the record what the race was of each prospective juror, as well as the twelve people (and one alternate) who served as jurors for the trial. Although the mere presence of some African-Americans on the jury is no bar to finding a *prima facie* case, it appropriate to consider the fact that the State did not eliminate all African-Americans when deciding whether or not there exists a prima facie case of discrimination".

Lane respectively avers that the First Circuits determination of the facts was unreasonable in light of the evidence presented at trial. First, the prosecution used its first three peremptory strikes to eliminate the few African Americans on the jury venire in violation of the Equal Protection Clause of the Louisiana and Federal Constitutions. When a Batson challenge was raised, the prosecution voluntarily provided a reason, stating that he struck the African American jurors to get to "better" jurors in the next panel, who he specifically named and all of whom were white. While arguably facially race neutral because the prosecutor didn't explicitly mention race in his answer, the prosecutor did not offer any justification for striking the African American jurors, but to say he wanted "better" jurors who were white. The prosecutor's stated justification was clearly in a pretext for using his strikes to eliminate African American jurors in favor of white jurors in violation of the Equal Protection Clause.

The Equal Protection Clause of the United States Constitution prohibits purposeful discrimination on the basis of race in the exercise of peremptory challenges. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). As just demonstrated, Lane met the three-step analysis to be applied when addressing a claim that peremptory challenges of a prospective juror were based on race.

Thus, the decision rendered by the First Circuit Court of Appeals was based on an unreasonable determination of the facts in light of the evidence presented.

### 3.) CHALLENGE FOR CAUSE

Lane avers that the adjudication of this claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court

proceeding". More specifically, in adjudicating this claim on appeal, the Honorable First Circuit made these findings:

> "Defense counsel raised a cause challenge for Edwards, which the trial court denied. Edwards was peremptory struck by defense counsel and, thus, he did not serve on the jury of the defendant's trial. It is undisputed that defense counsel exhausted all of defendant's peremptory challenges before the selection of the twelfth juror. Therefore, we need only determine the issue of whether the trial court erred in denying the defendant's cause challenge of Edwards".

Lane respectively avers that the First Circuit's determination of the facts was unreasonable in light of the evidence presented at trial. First, juror Edwards volunteered and expressed the view that he would not be able to keep it out of his mind if Lane elected not to testify, it would be the "elephant in the room," and that it would affirmatively affect him if Robert Lane exercised his Fifth Amendment Right to remain silent. The following exchange occurred which revealed Mr. Edwards inability to follow the law with respect to Lane's right not to testify:

Defense: You know, a situation were, say you're a cashier at a store and there's money missing, but nobody else—it's your word against somebody else's word, can you imagine a situation like that where you wouldn't want to take the stand, because all you really could say, to get up there and say I, I didn't do it.

Edwards: But if I had been convicted before, I would sure want to get up there and say it.

Defense: Okay. So the facts that—thank you. The fact that he had been convicted of something before means you would hold his silence against him?

Edwards: Well, not against him. I think it would be odd that he wouldn't want to sit up there this time and explain what happened.

Defense: And that would be something that would affect your deliberations?

Edwards: I don't know. It could be the elephant in the room there.

Defense: Right. You would be thinking about it even though you're told-

Edwards: Most people--

Defense: That, don't look at that. It would affect you?

Edwards: Yeah.

Defense: Okay.

Edwards: It would be in the back of your mind the whole time. R. 462-3.

The trial court denied defense counsel's challenge for cause of juror Edwards based his inability to follow the law with respect to Mr. Lane's Fifth Amendment Right not to testify. R. 486.

Following the trial court's erroneous denial, the defense was forced to exercise one of her peremptory strikes on Mr. Edwards. The defense exhausted their peremptory challenges by exercising twelve strikes. R. 487. Therefore, the only question for this Honorable Court is whether or not the trial court abused its discretion when it denied Mr. Lane's challenge of Brady Edwards for cause.

Finally, Mr. Lane avers that the trial court's erroneous denial runs afoul to the Fifth Amendment to the United States Constitution, and therefore, Lane's conviction and sentence should be reversed.

## CONCLUSION

The State Court's adjudication of Lane's constitutional claims resulted in a decision that involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States. Lane, therefore, is entitled to a new trial.

Respectfully Submitted:

*Robert Stanley Lane Jr. 250492*
Robert Stanley Lane, Jr. DOC #250492
Main Prison Complex, Spruce Hall-3
Louisiana State Penitentiary
Angola, Louisiana 70712

## CERTIFICATE OF SERVICE

I, <u>Robert Stanley Lane, Jr.</u>, hereby certify that I have served a copy of the foregoing petition upon the respondent by placing a copy of the same in the prison mailbox, properly addressed and postage prepaid, on this _22_ day of _MARCH_, 2019.

                                                                  _/s/ Robert Stanley Lane, Jr._
                                                                      Robert Stanley Lane, Jr.