## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ROBERT STANLEY LANE, JR.**                                          **CIVIL ACTION**

**VERSUS**                                                                          **NO. 19-3449**

**DARREL VANNOY**                                            **SECTION: "A"(1)**


## REPORT AND RECOMMENDATION

Petitioner, Robert Stanley Lane, Jr., a Louisiana state prisoner, filed this federal application seeking habeas corpus relief pursuant to 28 U.S.C. § 2254. For the following reasons, it is recommended that the application be **DISMISSED WITH PREJUDICE**.

On October 2, 2014, petitioner was convicted of molestation of a juvenile under Louisiana law.[1] On October 16, 2014, he was sentenced to a term of sixty years imprisonment, with the first twenty-five years of that sentence to be served without benefit of probation, parole, or suspension of sentence.[2] On November 9, 2015, the Louisiana First Circuit Court of Appeal affirmed his conviction and sentence.[3] The Louisiana Supreme Court then denied his related writ application on March 24, 2016.[4]

On or about December 16, 2016, petitioner filed an application for post-conviction relief with the state district court.[5] That application was denied on February 23, 2017.[6] His related writ

---

[1] State Rec., Vol. 3 of 4, transcript of October 2, 2014, p. 140; State Rec., Vol. 1 of 8, minute entry dated October 2, 2014; State Rec., Vol. 1 of 8, jury verdict form.
[2] State Rec., Vol. 3 of 8, transcript of October 16, 2014; State Rec., Vol. 1 of 8, minute entry dated October 16, 2014.
[3] State v. Lane, No. 2015 KA 0064, 2015 WL 6951423 (La. App. 1st Cir. Nov. 9, 2015); State Rec., Vol. 4 of 8.
[4] State v. Lane, 190 So. 3d 1190 (La. 2016); State Rec., Vol. 5 of 8.
[5] State Rec., Vol. 6 of 8.
[6] State Rec., Vol. 6 of 8, Judgment and Reasons for Judgment dated February 23, 2017.

applications were then likewise denied by the Louisiana First Circuit Court of Appeal on September 7, 2017,[7] and by the Louisiana Supreme Court on November 14, 2018.[8]

On March 22, 2019, petitioner then filed the instant federal application seeking habeas corpus relief.[9]  The state filed a response, conceding that the application is timely and that petitioner exhausted his remedies in the state courts, but arguing that his claims have no merit.[10]

## I.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002); accord Langley v. Prince, 926 F.3d 145, 155 (5th Cir. 2019) (noting that the AEDPA imposes a "relitigation bar" on claims adjudicated on the merits by the state court).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The

---

[7] State v. Lane, No. 2017 KW 0711, 2017 WL 3971924 (La. App. 1st Cir. Sept. 7, 2017); State Rec., Vol. 6 of 8.
[8] State ex rel. Lane v. State, 256 So. 3d 267 (La. 2018); State Rec., Vol. 6 of 8.
[9] Rec. Doc. 1.
[10] Rec. Doc. 10.

applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (footnotes, internal quotation marks, ellipses, and brackets omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 572 U.S. 415, 426 (2014). However, a federal habeas court must be mindful that "an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694; accord Harrington v. Richter, 562 U.S. 86, 102-03 (2011) ("Section 2254(d)

reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." (quotation marks omitted)); Langley, 926 F.3d at 156 ("The Supreme Court has repeatedly held that it is not enough to show the state court was wrong."); Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."). Therefore:

> "[T]he [AEDPA's] relitigation bar forecloses relief unless the prisoner can show the state court was *so* wrong that the error was well understood and comprehended in existing law beyond any possibility for fairminded disagreement. In other words, the unreasonable-application exception asks whether it is beyond the realm of possibility that a fairminded jurist could agree with the state court.

Langley, 926 F.3d at 156 (citations and quotation marks omitted). "Under AEDPA's relitigation bar, the very existence of reasonable disagreement forecloses relief." Id. at 170.

> Further, the Supreme Court has expressly cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Woodall, 572 U.S. at 426 (citations and quotation marks omitted). Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted).

In summary, "AEDPA prevents defendants – *and federal courts* – from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." Renico v. Lett, 559 U.S. 766, 779 (2010) (emphasis added).  The Supreme Court has expressly warned that although "some federal judges find [28 U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law and apply the strictly deferential standards of review mandated therein.  Woodall, 572 U.S. at 417.

## II.  Facts

On direct review, the Louisiana First Circuit Court of Appeal summarized the facts of this case as follows:

> Sometime between the beginning of March and the end of June 2010, seven-year-old B.L.[FN 2] spent the night at the home of the defendant, her paternal grandfather, who lived at The Mansions Apartments on Spartan Drive in St. Tammany Parish.  In the past, B.L. had spent the night at the defendant's home with other family members present, but this was the first (and only) time she had slept there alone, with no one besides the defendant present.  During the evening, B.L. and the defendant were watching television.  B.L., wearing a nightgown and underwear, was lying on the couch.  The defendant was sitting in a chair.  The defendant got up from his chair, approached B.L., and stood over her.  When B.L. asked why he was not watching television, the defendant reached his hand under B.L.'s nightgown and underwear and placed it on her "bottom".  The defendant then walked toward his bedroom and told B.L. to come to bed with him.  B.L. became frightened and went to the bathroom and locked both of the doors.  She stayed in the bathroom, remained awake the entire night, and waited until the next morning to come out when her father picked her up.

> [FN 2]  The victim is referred to by her initials.  See La. R.S. 46:1844(W).

> Approximately two years later, when the defendant was in jail on a different matter, B.L., for the first time, disclosed the incident to a friend of hers.  Her friend convinced her that she needed to report the incident to someone.  B.L. then reported the incident to her friend's mother, and then, later, to her own father[FN 3], when he returned from work.  B.L. was taken by her mother to the St. Tammany Parish Sheriff's Office where she reported the incident, and she was subsequently taken to the Children's Advocacy Center (CAC), also known as the "Hope House," where

she provided a videotaped statement about the "defendant touching her 'butt'" B.L. testified at trial and identified the defendant as the person who molested her.

> [FN 3]  The record reveals the friend to whom B.L. made the disclosure was the daughter of B.L.'s father's girlfriend at that time.

The defendant did not testify at trial.[11]

### III.  Petitioner's Claims

### A. Sufficiency of the Evidence

In his first claim, petitioner argues that there was insufficient evidence to support his conviction.  On direct appeal, the Louisiana First Circuit Court of Appeal denied that claim, holding:

> In his first assignment of error, the defendant argues the State did not prove all the elements of molestation of a juvenile.
>
> A conviction based on insufficient evidence cannot stand as it violates due process of law.  See U.S. Const. amend. XIV; La. Const. art. I, § 2.  The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).  See La.Code Crim. P. art. 821(B); State v. Ordodi, 2006-0207 (La. 11/29/06), 946 So.2d 654, 660; State v. Mussall, 523 So.2d 1305, 1308-09 (La. 1988).  The Jackson standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt.  When analyzing circumstantial evidence, La. R.S. 15:438 provides that the fact finder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence.  See State v. Patorno, 2001-2585 (La.App. 1 Cir. 6/21/02), 822 So.2d 141, 144.
>
> At the time of the commission of the offense, La. R.S. 14:81.2 provided, in pertinent part:
>
>> A. Molestation of a juvenile is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of

---

[11] State v. Lane, No. 2015 KA 0064, 2015 WL 6951423, at *1 (La. App. 1st Cir. Nov. 9, 2015); State Rec., Vol. 4 of 8.

either person, by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile. Lack of knowledge of the juvenile's age shall not be a defense.

Thus, the prosecution had to prove each element of the crime, namely: (1) the defendant was over the age of seventeen and was more than two years older than B.L., who was under the age of 17 (in this case, under the age of 13); (2) the defendant committed a lewd or lascivious act upon, or in the presence of, B.L.; (3) the defendant had the specific intent to arouse or gratify either B.L.'s or his own sexual desires; and (4) the defendant committed the lewd or lascivious act by use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile. See State v. Redfearn, 44,709 (La.App. 2 Cir. 9/23/09), 22 So.3d 1078, 1086, writ denied, 2009-2206 (La. 4/9/10), 31 So.3d 381.

In his brief, the defendant asserts there was insufficient evidence to prove that his touching of B.L.'s buttock was done with the intention of arousing or gratifying the sexual desires of either person; or that such action was conducted through the use of influence by virtue of a position of control or supervision over the juvenile. The defendant cites case law in his brief, but provides no argument to support these assertions.

The evidence at trial established that the defendant did not accidentally or inadvertently touch B.L.'s buttock; it established, rather, that the defendant, after staring for some time at B.L., who was lying on the couch, approached her. He then placed his hand under the blanket B.L. had over her, moved his hand under her nightgown, and then further moved his hand beneath her underwear to touch her buttock directly. Following this, the defendant told B.L. to come sleep with him.

A lewd and lascivious act is an act that is lustful, obscene, indecent, tending to deprave the morals in respect to sexual relations, and relating to sexual impurity or incontinence carried on in a wanton manner. State v. Jones, 2010-0762 (La. 9/7/11), 74 So.3d 197, 200 n. 1. Specific intent need not be proven as a fact. It may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Babin, 93-1361 (La.App. 1 Cir. 5/20/94), 637 So.2d 814, 818, writ denied, 94-1563 (La. 10/28/94), 644 So.2d 649, abrogated on other grounds; State ex rel. Olivieri v. State, 00-0172 (La. 2/21/01), 779 So.2d 735, cert. denied, 533 U.S. 936, 121 S.Ct. 2566, 150 L.Ed.2d 730 and 534 U.S. 892, 122 S.Ct. 208, 151 L.Ed.2d 148 (2001).

Based on the circumstances and the defendant's actions, a rational fact finder clearly could have found that the defendant's touching of B.L. was done with the intention of arousing his sexual desire. See State v. Forbes, 97-1839 (La.App. 1 Cir. 6/29/98), 716 So.2d 424, 428 (where we found that the defendant's acts of "[T]he intrusion under the T-shirt, and touching of the breasts, and the intrusion

into the victim's underpants, and touching of the area near the vagina, was sufficient to prove the essential element of the specific intent to arouse or gratify sexual desire.").   A rational fact finder also could have readily concluded that the defendant's molestation of B.L. was accomplished by the use of influence by virtue of a position of control or supervision over the juvenile.   B.L. was a young child, alone, with her grandfather in his home.   The defendant was clearly in a supervisory capacity regarding B.L.   Moreover, B.L.'s response to being molested, of going to the bathroom and locking herself therein overnight to avoid the defendant, as well as her comment at the CAC interview, that she wanted to run when he touched her but had nowhere to go because she did not know anyone, established the extent to which he had control over her.

The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness.   Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. The trier of fact's determination of the weight to be given evidence is not subject to appellate review.   An appellate court will not reweigh the evidence to overturn a fact finder's determination of guilt.   State v. Taylor, 97-2261 (La.App. 1 Cir. 9/25/98), 721 So.2d 929, 932.   We are constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases.   See State v. Mitchell, 99-3342 (La. 10/17/00), 772 So.2d 78, 83.   The fact that the record contains evidence which conflicts with the testimony accepted by a trier of fact does not render the evidence accepted by the trier of fact insufficient.   State v. Quinn, 479 So.2d 592, 596 (La.App. 1 Cir. 1985).

When a case involves circumstantial evidence and the jury reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt.   See State v. Moten, 510 So.2d 55, 61 (La.App. 1 Cir.), writ denied, 514 So.2d 126 (La. 1987).   The testimony of the victim alone is sufficient to prove the elements of the offense.   State v. Orgeron, 512 So.2d 467, 469 (La.App. 1 Cir. 1987), writ denied, 519 So.2d 113 (La. 1988).   The jury's verdict reflected the reasonable conclusion that, based on B.L.'s testimony and the CAC interview, the defendant molested his seven-year-old granddaughter.   In finding the defendant guilty, the jury clearly rejected the defense theory of innocence.   See Moten, 510 So.2d at 61.

After a thorough review of the record, we find the evidence supports the jury's unanimous verdict.   We are convinced that viewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant was guilty of molestation of a juvenile.   See State v. Calloway, 2007-2306 (La. 1/21/09), 1 So.3d 417, 418 (per curiam).

This assignment of error is without merit.[12]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning additional reasons.[13]

Because a sufficiency of the evidence claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting this claim unless petitioner shows that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); Davila v. Davis, 650 F. App'x 860, 866 (5th Cir. 2016), aff'd, 137 S. Ct. 2058 (2017).  He has not done so.

As the Louisiana First Circuit Court of Appeal correctly noted, claims of insufficient evidence are to be analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979).  In Jackson, the United States Supreme Court held that, in assessing such a claim, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Id. at 319 (emphasis added).  Further, as the United States Supreme Court has explained:

> The opinion of the Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), makes clear that it is the responsibility of the jury – not the court – to decide what conclusions should be drawn from evidence admitted at trial.  A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.  What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court.  The federal court instead may do so only if the state court

---

[12] State v. Lane, No. 2015 KA 0064, 2015 WL 6951423, at *1-4 (La. App. 1st Cir. Nov. 9, 2015); State Rec., Vol. 4 of 8.
[13] State v. Lane, 190 So. 3d 1190 (La. 2016); State Rec., Vol. 5 of 8.

decision was "objectively unreasonable." <u>Renico v. Lett</u>, 559 U.S. ——, ——, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010) (internal quotation marks omitted).

> Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold.

<u>Cavazos v. Smith</u>, 565 U.S. 1, 2 (2011); <u>accord</u> <u>Herrera v. Collins</u>, 506 U.S. 390, 402 (1993) ("[T]he <u>Jackson</u> inquiry does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit."); <u>Langley v. Prince</u>, 926 F.3d 145, 155 (5th Cir. 2019) ("The Supreme Court has repeatedly held that it is not enough to show the state court was wrong.").

Lastly, it must also be remembered that Louisiana's circumstantial evidence standard requiring that every reasonable hypothesis of innocence be excluded does *not* apply in federal habeas corpus proceedings; in these proceedings, *only* the <u>Jackson</u> standard need be satisfied, even if state law would impose a more demanding standard of proof.  <u>Foy v. Donnelly</u>, 959 F.2d 1307, 1314 n.9 (5th Cir. 1992); <u>Higgins v. Cain</u>, Civ. Action No. 09-2632, 2010 WL 890998, at *21 n.38 (E.D. La. Mar. 8, 2010), <u>aff'd</u>, 434 F. App'x 405 (5th Cir. 2011); <u>Williams v. Cain</u>, No. 07-4148, 2009 WL 224695, at *4 (E.D. La. Jan. 29, 2009), <u>aff'd</u>, 408 F. App'x 817 (5th Cir. 2011); <u>Davis v. Cain</u>, Civ. Action No. 07-6389, 2008 WL 5191912, at *14 (E.D. La. Dec. 11, 2008); <u>Wade v. Cain</u>, Civil Action No. 05-0876, 2008 WL 2679519, at *6 (W.D. La. May 15, 2008) (Hornsby, M.J.) (adopted by Stagg, J., on July 3, 2008), <u>aff'd</u>, 372 F. App'x 549 (5th Cir. Apr. 9, 2010); <u>see also</u> <u>Coleman</u>, 566 U.S. at 655 ("Under <u>Jackson</u>, federal courts must look to state law for the substantive elements of the criminal offense, but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." (citation and internal quotation marks omitted)).

In the instant case, it is not disputed that the age requirements set forth in the statute defining the criminal offense were met.[14]   However, petitioner argues that, even "assuming" that the alleged touching occurred, there was no evidence that the touching was a lewd or lascivious action taken in order to gratify his sexual desires or that the touching occurred while he was in a position of influence over the victim.   That argument fails for the following reasons.

First, it was obviously rational for the jury to conclude that the touching in fact occurred – the victim testified that it did, and there was no evidence to the contrary.   A victim's testimony alone is generally sufficient evidence to support a conviction.   Peters v. Whitley, 942 F.2d 937, 941-42 (5th Cir. 1991); see also Fetterley v. Whitley, No. 94-30310, 1994 WL 708655, at *1 n.6 (5th Cir. Dec. 6, 1994); Holderfield v. Jones, 903 F. Supp. 1011, 1017 (E.D. La. 1995).   Further, "under Jackson, the assessment of the credibility of witnesses is generally beyond the scope of review."   Schlup v. Delo, 513 U.S. 298, 330 (1995).

Second, as to whether it was rational for the jury to conclude that the act was a lewd or lascivious one performed in order to gratify petitioner's sexual desires, the Court is at a loss to envision how the jury could have concluded otherwise.   The evidence showed that the petitioner placed his hand under both a blanket and the victim's nightgown, then placed his hand inside her underwear in order to touch her buttocks, and then told her to join him in bed.   As the state court explained, those actions were obviously purposeful, not accidental.   Moreover, no wholesome explanation for those actions comes to mind, and petitioner does not even attempt to suggest one.

Third, it was likewise rational for the jury to conclude petitioner was acting from "a position of control or supervision" over the victim.   She was a seven-year-old child, and petitioner,

---

[14] Rec. Doc. 1-1, p. 14 ("The ages of the relevant parties are not in dispute.").

her grandfather, was serving as her sole babysitter at the time.  In light of those circumstances, the Court is again at a loss to envision how the jury could have reached a contrary conclusion with respect to this final element of the offense.

In summary, when the evidence in this case is viewed in the light most favorable to the prosecution, it simply cannot be said that the guilty verdict was irrational.  Therefore, petitioner cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Accordingly, under the deferential standards of review which must be applied by this federal habeas court, relief is not warranted.

### B.  Batson Violation

Petitioner's second claim is that the trial court erred in denying the defense's <u>Batson</u> challenge after the prosecutor used a peremptory strike to remove an African American juror.  <u>See</u> <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986).  "Although a prosecutor ordinarily is entitled to exercise permitted peremptory challenges for *any reason at all*, as long as that reason is related to his view concerning the outcome of the case to be tried, the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant."  <u>Id.</u> at 89 (emphasis added; citation and quotation marks omitted).

As an initial matter, the Court notes that the jury selection in this case was somewhat chaotic, with both the prosecutor and defense counsel exercising multiple strikes and backstrikes. Of import here, the transcript reflects that the prosecutor initially used peremptory strikes to

remove Stacy Bickham, Frederick Brown, perhaps Leslie Chaix,[15] and Willie Jones.  When the

prosecutor used the strike to remove Jones, defense counsel made a <u>Batson</u> challenge.  After the

trial court denied the <u>Batson</u> challenge, the prosecutor then also used peremptory strikes to remove

the following jurors:   Juan Ambert; Sarah Larocca; Tamera Smith; David Carbon; Aimee

O'Shaugnessy; Carryl Osborn; Anita Gautreaux; and Rachel Gangloff.

On direct appeal, the Louisiana First Circuit Court of Appeal denied petitioner's <u>Batson</u>

claim, holding:

> [T]he defendant argues the trial court erred in denying his <u>Batson</u> challenge during
> *voir dire*.  Specifically, the defendant contends the prosecutor improperly used
> peremptory strikes on three prospective jurors on the basis of race.
>   In <u>Batson v. Kentucky</u>, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986),
> the Supreme Court adopted a three-step analysis to determine whether or not the
> constitutional rights of a defendant or prospective jurors have been infringed upon
> by impermissible discriminatory practices.  First, the defendant must make a *prima
> facie* showing that the prosecutor has exercised peremptory challenges on the basis
> of race.  Second, if the requisite showing has been made, the burden shifts to the
> prosecutor to articulate a race-neutral explanation for striking the jurors in question.
> Finally, the trial court must determine whether the defendant has carried his burden
> of proving purposeful discrimination.  The second step of this process does not
> demand an explanation that is persuasive, or even plausible.  At this second step of
> the inquiry, the issue is the facial validity of the prosecutor's explanation.  <u>Purkett
> v. Elem</u>, 514 U.S. 765, 767-68, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995) (*per
> curiam*).  <u>See</u> La.Code Crim. P. art. 795(C), (D), & (E).
>   During *voir dire*, a number of prospective jurors were accepted from the
> first panel.  The prosecutor used back strikes on Ms. Stacy Bickham and Frederick
> Brown.  When several more prospective jurors were accepted from the second
> panel, the prosecutor used a back strike on Ms. Willie Jones.  Defense counsel
> raised a <u>Batson</u> challenge at this point, and the following exchange took place:
>
>> Ms. Conner:  There is a Batson objection, 323, strike.  I want to say
>> he is the African-American.  He is half the strike.
>>
>> Mr. Noriea:  Ms. Dodie is African-American.

---

[15] The record is contradictory regarding Chaix.  The minute entry indicates that Chaix was struck by defense counsel.
State Rec., Vol. 1 of 8, minute entry dated October 1, 2014.  However, the transcript indicates that she was struck by
the prosecutor.  State Rec., Vol. 2 of 8, transcript of October 1, 2014, p. 98.

Ms. Conner:  Yes, she is.  Everyone you struck is African-American.

Mr. Noriea:  Race neutral. I want to get some jurors on the second panel that is (sic) much better than her.  That's a race neutral [explanation] and I can give you the case.  I'm going to strike a bunch of jurors in a row to get to certain jurors in this last panel and if I don't back strike certain people that I don't feel [are] as good as the people I want to get to, that's a race neutral reason.

Ms. Conner:  Your ruling?

The Court:  I find it to be acceptable.

Ms. Conner:  Please note my objection.

The Court:  The record will so reflect, and for the record, you know, a very interesting trend to observe.  I am not quite sure of the ethnicity of the three or four jurors on this panel and you identified Dr. Dodie as African-American.  Just that I will ask you to identify if you think somebody else with (sic) different ethnicity.

After the jury was selected and trial had begun, the prosecutor provided the trial court with more information regarding the Batson challenge:

Mr. Noriea:  Judge, I would just like to supplement the record on that Batson challenge.  The case, State of Louisiana v. Kirsch.  It is, it is cited [880 So.2d 890].  That clearly states striking jurors in succession to get to a certain point is a neutral basis for striking anybody on the jury, and, secondly, the two jurors that I was headed for in this particular case is (sic) John Donahue and I think it's John Taylor, who I felt was better for the state's case.  Just to clarify the record.

Ms. Conner:  And, Your Honor, just a response.  Striking jurors in succession is not what happened in that case.  African-American jurors were back struck in order to make room for two white men.

Mr. Noriea:  Well, that's part of the thing.  I've go [sic] to knock out people to have one.  If they are before or after, it doesn't make any difference.  I knocked out to get to a better juror and that is race neutral, whether it's back strike, front strike or strike.

14

The defendant notes in brief that Bickham, Brown, and Jones are African-American. According to the defendant, the trial court's failure to find a Batson violation in the prosecutor's peremptory strikes of qualified African-American prospective jurors for the "sole stated reason of making room for white jurors in the next panel was clear error."

Initially, we note that it is not clear from the record what the race was of each prospective juror, as well as the twelve people (and one alternate) who served as jurors for the trial. Although the mere presence of some African-Americans on the jury is no bar to finding a *prima facie* case, it is appropriate to consider the fact that the State did not eliminate all African-Americans when deciding whether or not there exists a *prima facie* case of discrimination. See State v. Duncan, 99-2615 (La. 10/16/01), 802 So.2d 533, 549, cert. denied, 536 U.S. 907, 122 S.Ct. 2362, 153 L.Ed.2d 183 (2002). As the trial court noted, following the denial of the Batson challenge, "I am not quite sure of the ethnicity of the three or four jurors on this panel and you identified Dr. Dodie as African-American." The defendant asserts in brief that after the third strike in a row of an African-American juror by the State, defense counsel raised a Batson objection, "stating that all three peremptory strikes used by the [S]tate were used on African-American jurors." But defense counsel actually made no mention of three peremptory strikes used by the State. What defense counsel said was, "There is a Batson objection, 323, strike. I want to say he is the African-American. He is half the strike." It is not at all clear what defense counsel meant by this, but there was clearly no reference to Bickham or Brown. Defense counsel's Batson objection directly followed the prosecutor's strike of Jones, and defense counsel had made no objection when Bickham or Brown were back-struck. In any event, we find the defendant has made no showing of purposeful discrimination.

When the prosecutor offered race-neutral reasons for his use of peremptory challenges, the preliminary issue of whether the defendant made a *prima facie* showing is moot. See Hernandez v. New York, 500 U.S. 352, 359, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991); State v. Jacobs, 99-0991 (La. 5/15/01), 803 So.2d 933, 941, cert denied, 534 U.S. 1087, 122 S.Ct. 826, 151 L.Ed.2d 707 (2002). At this point, the trial court may "effectively collapse the first two stages of the Batson procedure, whether or not the defendant established a prima facie case of purposeful discrimination, and may then perform the critical third step of weighing the defendant's proof and the prosecutor's race-neutral reasons to determine discriminatory intent." State v. Jacobs, 803 So.2d at 941.

In this case, the inference in the trial court's denial of the Batson challenges was that the defendant did not meet his burden of proving purposeful discrimination. When we consider the third step of the Batson challenge, the inquiry is whether the trial court erred in determining there was no discriminatory intent when weighing the defendant's proof and prosecutor's race-neutral reasons. See State v. Jacobs, 803 So.2d at 941.

A reviewing court owes the trial court's evaluations of discriminatory intent great deference and should not reverse them unless they are clearly erroneous. The

Batson explanation does not need to be persuasive, and unless a discriminatory intent is inherent in the explanation, the reason offered will be deemed race neutral. The ultimate burden of persuasion remains on the party raising the challenge to prove purposeful discrimination.  See State v. Elie, 2005-1569 (La. 7/10/06), 936 So.2d 791, 795-96.

Our review of the prosecutor's explanations for the peremptory challenges against Bickham, Brown, and Jones reflects race-neutral justifications.  Louisiana courts have found a myriad of explanations qualify as race-neutral reasons.  See State v. Parker, 2004-1017 (La.App. 5 Cir. 3/29/05), 901 So.2d 513, 523, writ denied, 2005-1451 (La. 1/13/06), 920 So.2d 235 (finding that when accepted by the trial judge, the lodging of a peremptory challenge based on a juror's body language does not violate Batson); State v. Woods, 97-0800 (La.App. 1 Cir. 6/29/98), 713 So.2d 1231, 1234, writ denied, 98-3041 (La. 4/1/99), 741 So.2d 1281 (finding that a prospective juror's mistaken belief that the prosecutor had represented prospective juror in a lawsuit was a legitimate, race-neutral justification for the State's peremptory strike).  See State v. Nelson, 2010-1724 (La. 3/13/12), 85 So.3d 21, 31-32.

In this case, the prosecutor struck these three prospective jurors to get to the prospective jurors he found more favorable, but were further down the list in the selection process.  This explanation was not unreasonable and clearly had some basis in trial strategy.  See State v. Handon, 2006-0131 (La.App. 1 Cir. 12/28/06), 952 So.2d 53, 59.  See also State v. Kirsch, 2004-214 (La.App. 5 Cir. 7/27/04), 880 So.2d 890, 897-99 (finding that the prosecutor's explanation that he excused two African-American prospective jurors in order to influence the challenges made by the defense was race-neutral); State v. Bailey, 97-302 (La.App. 5 Cir. 4/28/98), 713 So.2d 588, 604-05, writ denied, 98-1458 (La. 10/30/98), 723 So.2d 971 (finding that where the State's reason for excluding two prospective African-American jurors was because it wanted to select a more desirable juror who was positioned after them in the selection process was race-neutral, and reasoning that "there is no showing herein that the prosecutor was excusing jurors based upon racially discriminatory reasons.  Rather, it is evident that the prosecutor was making a strategic decision with regard to these two jurors....  The state's decision was one of trial strategy and not racial discrimination.").  The accepted jurors may have exhibited traits that the prosecutor reasonably could have believed would have made them desirable as jurors.  See State v. Collier, 553 So.2d 815, 822 (La .1989); State v. Leagea, 95-1210 (La.App. 1 Cir. 5/10/96), 673 So.2d 646, 650, writ denied, 96-1507 (La. 11/22/96), 683 So.2d 287.

We note also that the prosecutor struck Brown because Brown stated he required a burden of proof higher than beyond a reasonable doubt.  During *voir dire*, the prosecutor asked Brown if he was "okay" with the State's burden of proof not being one hundred percent.  Brown replied "No."  When the prosecutor asked if he wanted one hundred percent certainty, Brown replied "At least 99.9."  The prosecutor then asked, "Ninety nine point nine.  Isn't that beyond all doubt?" Brown replied "Pretty much."  When defense counsel questioned Brown, he made

it clear he thought the defendant, given the type of crime he was accused of, was probably already guilty. When the prosecutor used a back strike on Brown, he stated, "I back strike juror 38, Frederick Brown. I did his 99.9 percent. Liggio is good."

Finally, we note that the shared race of the defendant and the victim in this case, both Caucasian, can be considered in a Batson challenge. While Batson is not limited to interracial cases, a commentator observed that "[s]ome lower courts take the view that 'the race of a defendant as well as the race of the victim and key witnesses, is a relevant circumstance that the trial court may consider when determining whether defendant has raised an inference of purposeful discrimination sufficient to make a prima facie case.'" 5 Wayne R. LaFave, et al, Criminal Procedure § 22.3(d) (2nd ed. 2000 Supp.) (citing State v. Locklear, 349 N.C. 118, 140, 505 S.E.2d 277, 290 (1998), cert. denied, 526 U.S. 1075, 119 S.Ct. 1475, 143 L.Ed.2d 559 (1999)). State v. Duncan, 802 So.2d at 552.

The defendant offered no facts or circumstances supporting an inference that the State exercised its strikes in a racially discriminatory manner. In fact, the defendant offered no evidence at all. Thus, the defendant's proof, when weighed against the prosecutor's race-neutral reasons, was not sufficient to prove the existence of discriminatory intent. See State v. Green, 94-0887 (La. 5/22/95), 655 So.2d 272, 289-90. Moreover, a review of the entire *voir dire* transcript fails to reveal any evidence that the use of peremptory strikes by the prosecutor was motivated by impermissible considerations. See State v. Handon, 952 So.2d at 59.

This assignment of error is without merit.[16]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning additional reasons.[17]

As the Louisiana First Circuit Court of Appeal correctly noted, a Batson challenge requires a three-step process. Specifically:

First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race; second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question; and third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

Snyder v. Louisiana, 552 U.S. 472, 476-77 (2008) (quotation marks and brackets omitted).

---

[16] State v. Lane, No. 2015 KA 0064, 2015 WL 6951423, at *9-12 (La. App. 1st Cir. Nov. 9, 2015); State Rec., Vol. 4 of 8.

[17] State v. Lane, 190 So. 3d 1190 (La. 2016); State Rec., Vol. 5 of 8.

As the Louisiana First Circuit Court of Appeal also correctly noted, the issue of whether defense counsel established a prima facie case of discrimination was rendered moot in the instant case because the prosecutor immediately proffered his reasons for the challenged strikes.  United States v. Williams, 264 F.3d 561, 571 (5th Cir. 2001) ("Where … the prosecutor tenders a race-neutral explanation for his peremptory strikes, the question of Defendant's prima facie case is rendered moot and our review is limited to the second and third steps of the Batson analysis."); see also Hernandez v. New York, 500 U.S. 352, 359 (1991) (plurality opinion) ("Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot.").

Therefore, the Court immediately proceeds to the second step where the issue is whether the prosecutor's articulated reason for exercising the strikes was "race neutral."  Snyder, 552 U.S. at 476.  Little is required of the prosecutor at this step.  For example, "the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause."  Batson, 476 U.S. at 97.  Rather, "[a] neutral explanation in the context of our analysis here means an explanation based on something other than the race of the juror.  At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation.  Unless a discriminatory intent is *inherent* in the prosecutor's explanation, the reason offered will be deemed race neutral."  Hernandez, 500 U.S. at 360 (emphasis added).  Here, the prosecutor's stated reason for removing the jurors were not inherently indicative of discriminatory intent:  the prosecutor stated that he simply exercised the strikes in order to ensure that the selection process progressed to potential jurors on the panel he deemed

more favorable to the prosecution.  Because that reason is facially valid and nondiscriminatory, the second step was satisfied.

At the third step, the critical issue is "the persuasiveness of the justification proffered by the prosecutor"; however, it must be remembered that "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike."  Rice v. Collins, 546 U.S. 333, 338 (2006).  As noted, the trial judge in the instant case found that the prosecutor did not exercise his peremptory strikes in a discriminatory manner.

The state court's ruling on that third step of the Batson analysis was a finding of *fact* and, as such, must be reviewed under the AEDPA's specific and highly deferential standard of review applicable to factual determinations.  Therefore:

> Under AEDPA, … a federal habeas court must find the state-court conclusion "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  Thus, a federal habeas court can only grant [the petitioner's] petition if it was *unreasonable* to credit the prosecutor's race-neutral explanations for the Batson challenge.  *State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by "clear and convincing evidence."* § 2254(e)(1).

Rice, 546 U.S. at 338-39 (2006) (emphasis added).  Even if "[r]easonable minds reviewing the record might disagree about the prosecutor's credibility, … on habeas review that does not suffice to supersede the trial court's credibility determination."  Id. at 341-42.  "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."  Wood v. Allen, 558 U.S. 290, 301 (2010).

Here, petitioner has made no effort to overcome the presumption of correctness which attached to the trial judge's factual determination that the jurors at issue were excused for a nondiscriminatory reason.  As noted, the prosecutor stated that he was exercising his strikes not

because he found the jurors being removed to be particularly objectionable in and of themselves, but instead because he wanted to keep spots available on the jury for upcoming potential jurors who were even better for the state.  That tactic is neither inherently discriminatory nor impermissible, and petitioner has not met his burden to show that the prosecutor's reasoning was unpersuasive.  For example, no effort was made by the defense to conduct a comparative analysis to show that the non-minority upcoming jurors were not in fact more favorable to the prosecution than those removed.  Likewise, no effort was made to identify any non-minority jurors not removed by the prosecutor who were in fact less favorable to the prosecution than the jurors against whom the strikes were exercised.

In the end, because petitioner has offered no evidence – and certainly no "clear and convincing evidence" – of a discriminatory motive, he has not met his burden to establish that the state court's ultimate conclusion that the strikes were not racially motivated was *unreasonable*. Accordingly, honoring the presumption of correctness which attached to the state court's factual finding and applying the deferential standard of review mandated by the AEDPA, this Court should deny petitioner's Batson claim.

## C.  Denial of Challenge for Cause

Petitioner's third and final claim is that the trial court erred in denying the defense challenge of prospective juror Brady Edwards for cause.  On direct appeal, the Louisiana First Circuit Court of Appeal denied that claim, holding:

> [T]he defendant argues the trial court erred in denying his challenge for cause of a prospective juror.  Specifically, the defendant contends that the answers provided by Brady Edwards indicated he would not be able to follow the law regarding his (the defendant's) right not to testify.
> An accused in a criminal case is constitutionally entitled to a full and complete *voir dire* examination and to the exercise of peremptory challenges.  La.

20

Const. art. I, § 17(A).   The purpose of *voir dire* examination is to determine prospective jurors' qualifications by testing their competency and impartiality and discovering bases for the intelligent exercise of cause and peremptory challenges. State v. Burton, 464 So.2d 421, 425 (La.App. 1 Cir.), writ denied, 468 So.2d 570 (La. 1985).   A trial court is accorded great discretion in determining whether to seat or reject a juror for cause, and such rulings will not be disturbed unless a review of the *voir dire* as a whole indicates an abuse of that discretion.   A challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice, or inability to render judgment according to law may be reasonably implied.   State v. Martin, 558 So.2d 654, 658 (La.App. 1 Cir.), writ denied, 564 So.2d 318 (La.1990).   See La.Code Crim. P. art. 797.

A defendant must object at the time of the ruling on the refusal to sustain a challenge for cause of a prospective juror.   La.Code Crim. P. art. 800(A).   Prejudice is presumed when a challenge for cause is erroneously denied by a trial court and the defendant has exhausted his peremptory challenges.   To prove there has been error warranting reversal of the conviction, the defendant need only show (1) the erroneous denial of a challenge for cause; and (2) the use of all his peremptory challenges.   State v. Robertson, 92-2660 (La. 1/14/94), 630 So.2d 1278, 1280-81.

Defense counsel raised a cause challenge for Edwards, which the trial court denied.   Edwards was peremptorily struck by defense counsel and, thus, he did not serve on the jury of the defendant's trial.   It is undisputed that defense counsel exhausted all of the defendant's peremptory challenges before the selection of the twelfth juror.[FN 4]   Therefore, we need only determine the issue of whether the trial court erred in denying the defendant's cause challenge of Edwards.

[FN 4]   The crime of molestation of a juvenile (under the age of thirteen) is punishable by imprisonment at hard labor.   La. R.S. 14; 81.2(B)(1).   Cases in which the punishment is necessarily confinement at hard labor shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict. La.Code Crim. P. art. 782(A).   In trials of offenses punishable necessarily by imprisonment at hard labor, each defendant shall have twelve peremptory challenges.   See La.Code Crim. P. art. 799.

Louisiana Code of Criminal Procedure article 797 states, in pertinent part:

The state or the defendant may challenge a juror for cause on the ground that:

....

(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a

juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;

....

(4) The juror will not accept the law as given to him by the court [.]

Defendant complains in brief of the following exchange between potential juror Edwards and defense counsel during questioning of the second panel of prospective jurors:

Ms. Conner:  You know, a situation where, say you're a cashier at a store and there's money missing, but nobody else – it's your word against somebody else's word, can you imagine a situation like that where you wouldn't want to take the stand, because all you really could say, to get up there and say I, I didn't do it.

Edwards:  But if I had been convicted before, I would sure want to get up there and say it.

Ms. Conner:  Okay.  So the facts that – thank you.  The fact that he had been convicted of something before means you would hold his silence against him?

Edwards:  Well, not against him.  I think it would be odd that he wouldn't want to sit up there this time and explain what happened.

Ms. Conner:  And that would be something that would affect your deliberations?

Edwards:  I don't know.  It could be the elephant in the room there.

Ms. Conner:  Right.  You would be thinking about it even when you're told –

Edwards:  Most people –

Ms. Conner:  That, don't look at that.  It would affect you?

Edwards:  Yeah.

Ms. Conner:  Okay.

Edwards:  It would be in the back of your mind the whole time.

22

At the bench conference, defense counsel, in challenging Edwards for cause, merely stated "Edwards, Fifth Amendment," before the trial court denied the challenge.  (Defense counsel, in fact, challenged for cause seven prospective jurors for being Fifth Amendment "impaired."  The trial court denied all of these challenges.)  We find no reason to disturb the ruling of the trial court.  While Edwards apparently had strong feelings about a defendant testifying if he had already been convicted of a similar crime, his brief *voir dire* testimony overall established he could have sat as an impartial juror and applied the law as instructed.

Edwards specifically stated that he would not hold the defendant's "silence" against him.  A prospective juror's seemingly prejudicial response is not grounds for an automatic challenge for cause, and a trial court's refusal to excuse him on the grounds of impartiality is not an abuse of discretion, if after further questioning the potential juror demonstrates a willingness and ability to decide the case impartially according to the law and evidence.  See State v. Lee, 559 So.2d 1310, 1318 (La. 1990), cert. denied, 499 U.S. 954, 111 S.Ct. 1431, 113 L.Ed.2d 482 (1991); State v. Copeland, 530 So.2d 526, 534 (La. 1988), cert. denied, 489 U.S. 1091, 109 S.Ct. 1558, 103 L.Ed.2d 860 (1989).  See also State v. Kang, 2002-2812 (La. 10/21/03), 859 So.2d 649, 654-55.

The line-drawing in many cases is difficult.  Accordingly, the trial court must determine the challenge on the basis of the entire *voir dire*, and on the court's personal observations of the potential jurors during the questioning.  Moreover, the reviewing court should accord great deference to the trial court's determination and should not attempt to reconstruct the *voir dire* by a microscopic dissection of the transcript in search of magic words or phrases that automatically signify the juror's qualification or disqualification.  See State v. Miller, 99-0192 (La. 9/6/00), 776 So.2d 396, 405-06, cert denied, 531 U.S. 1194, 121 S.Ct. 1196, 149 L.Ed.2d 111 (2001).

Despite the defendant's assertion that Edwards could not be fair and impartial, the trial court was in the best position to determine whether he could discharge his duty as a juror.  Upon reviewing the *voir dire* in its entirety, we cannot say the trial court abused its discretion in denying defense counsel's challenge for cause.

This assignment of error is without merit.[18]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning additional reasons.[19]

---

[18] State v. Lane, No. 2015 KA 0064, 2015 WL 6951423, at *12-14 (La. App. 1st Cir. Nov. 9, 2015); State Rec., Vol. 4 of 8.
[19] State v. Lane, 190 So. 3d 1190 (La. 2016); State Rec., Vol. 5 of 8.

This claim warrants little consideration in this federal habeas corpus proceeding. Regardless of whether Edwards should have been excused for cause, which is an issue this Court need not and does not reach, petitioner's claim clearly fails for an entirely different reason. After the challenge for cause was denied, *defense counsel used a peremptory strike to remove Edwards from the jury*.[20]  Where, as here, a juror is removed through use of a peremptory strike after the denial of a challenge for cause, the petitioner is entitled to federal habeas corpus relief only if he demonstrates that the jury *ultimately selected* to try the case was *not impartial*.  Ross v. Oklahoma, 487 U.S. 81, 85-86 (1988).  In Ross, the Supreme Court further expressly noted:

> [W]e reject the notion that the loss of a peremptory challenge constitutes a violation of the constitutional right to an impartial jury.  We have long recognized that peremptory challenges are not of constitutional dimension.  They are a means to achieve the end of an impartial jury.  So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated.

Id. at 88 (citations omitted); accord Edwards v. Stephens, 612 F. App'x 719, 722 (5th Cir. 2015) ("[T]he forced use of a peremptory challenge does not rise to the level of a constitutional violation. Instead, a district court's erroneous refusal to grant a defendant's challenge for cause is only grounds for reversal if the defendant establishes that the jury which actually sat to decide his guilt or innocence was not impartial." (citation and quotation marks omitted)).

Because defense counsel used a peremptory strike to remove Edwards and because petitioner made no effort to establish that the jury ultimately selected was not impartial, his claim necessarily fails.  Dorsey v. Quarterman, 494 F.3d 527, 533 (5th Cir. 2007); Lagrone v. Cockrell, No. 02-10976, 2003 WL 22327519, at *12 (5th Cir. Sept. 2, 2003); Arita v. Cain, Civ. Action No.

---

[20] State Rec., Vol. 3 of 8, transcript of October 1, 2014, pp. 159-60.

11-636, 2011 WL 4738666, at *29 (E.D. La. Aug. 25, 2011), adopted, 2011 WL 4738658 (E.D. La. Oct. 6, 2011), aff'd, 500 F. App'x 352 (5th Cir. 2012); Higgins v. Cain, Civ. Action No. 09-2632, 2010 WL 890998, at *27 (E.D. La. Mar. 8, 2010), aff'd, 434 F. App'x 405 (5th Cir. 2011), Stoves v. LeBlanc, Civ. Action No. 04-2037, 2010 WL 3523012, at *12 (E.D. La. Apr. 10, 2009), adopted, 2010 WL 3522957 (E.D. La. Sept. 1, 2010); Wilson v. Cain, Civ. Action No. 06-890, 2009 WL 2163124, at *12 (E.D. La. July 16, 2009), aff'd, 641 F.3d 96 (5th Cir. 2011).

That result is not changed by the fact that Louisiana state law provides relief when a defendant's challenge for cause is erroneously denied and the defendant exhausts all of his peremptory challenges.[21]   Because that is a protection afforded only by *state* law, a violation of that protection does not warrant federal relief.  Lovell v. Vannoy, Civ. Action No. 17-5836, 2018 WL 3104182, at *5 (E.D. La. Apr. 2, 2018), adopted, 2018 WL 3094248 (E.D. La. June 21, 2018); Hebert v. Vannoy, Civ. Action No. 17-2784, 2017 WL 6989108, at *7 (E.D. La. Dec. 20, 2017), adopted, 2018 WL 466167 (E.D. La. Jan. 16, 2018).  Federal habeas corpus relief may be granted only to remedy violations of the Constitution and laws of the United States; mere violations of state law will not suffice.  28 U.S.C. § 2254; Engle v. Isaac, 456 U.S. 107, 119 (1983).

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that the federal application seeking habeas corpus relief filed by Robert Stanley Lane, Jr., be **DISMISSED WITH PREJUDICE**.

---

[21] See State v. Taylor, 875 So. 2d 58, 62 (La. 2004) ("In order for a defendant to prove reversible error warranting reversal of both his conviction and sentence, he need only show the following: (1) erroneous denial of a challenge for cause; and (2) use of all his peremptory challenges.  Prejudice is presumed when a defendant's challenge for cause is erroneously denied and the defendant exhausts all his peremptory challenges.  An erroneous ruling depriving an accused of a peremptory challenge violates his substantial rights and constitutes reversible error." (citations and footnote omitted)).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[22]

New Orleans, Louisiana, this _____9th_____ day of March, 2020.


_____
**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**

---

[22] Douglass referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.